May it please the court. Yes, well, just to recapitulate, as you are aware, you did file a motion to withdraw as counsel, which was never acted upon by the court. Unfortunately, there was a mistake in the way it was handled. That's right. But the problem is that at the moment, you are the only counsel of record. Right. Now, may I ask when the last time was that you talked to your client? I talked to him last night. All right. So were you prepared then, or do you... I think pro bono counsel is prepared to make the argument, and Mr. Concha has agreed to that. But just in case, I've familiarized myself with the file, so I'm familiar with the issues. The truth is, after I was terminated from the case, I could no longer get access to PACER, so I had to really quickly get the file Saturday afternoon, but I've read it over. So what's the status of your motion? Is it still pending as far as you're concerned? Yes, Your Honor. Or do you want to withdraw it? Yes, I would like to. I'd still like to renew my motion because I'm no longer with the office. Well, yes, but you have a client. Yes. So for purposes of today, would it be okay if pro bono made the argument? Well, only if you, as counsel for your client, are willing to adopt their presentation as yours. I am, Your Honor. You are? I am. All right. Well, then we'll let them have the remainder of the time. Thank you. Ms. Hsu, before you sit down, if I might inquire, did you get the office file over the weekend? I did. Okay. I got it over the weekend. Because I do have some questions, and maybe we'll let the Chapman University students go first, but if you would stand by, I may have some questions with regard to what's in the file and what the status was of efforts to adjust. Of course. The status. Okay. May I sit down? Yes. Thank you, Ms. Hsu. Thank you. All right. Who will be representing the amicus? Good morning, Your Honors. May it please the Court. My name is Aaron Gobin. I'm a third-year law student at Chapman University School of Law, appearing under the representation of Professors Afrasiabi, Davis, and Penfield. I am pro bono appointed amicus counsel for Petitioner David Concha. I'd like to reserve two of my ten minutes for rebuttal, and I will wind the clock. Since the Court issued an order on Friday, I will discuss the issue of mootness first. I will then move to the other issues that are before this Court. This Court should reverse for four reasons. First, this case is not moot in light of the already approved I-130 petition because the immigration judge already rejected David's I-485 application. Second, the following day my Wait a minute. Hold it. Hold it. Stop there. Doesn't that establish that it is indeed moot if the I-130 petition has been granted? Hasn't he achieved all of the relief that he is asking for or not? Your Honors, it appears that if this Court now dismisses this case as moot, that David would be without recourse. This is because the immigration judge denied David's I-485 application for adjustment of status. When did that happen? How many years ago was that? Your Honor, I'm not sure. Aren't we talking about something that occurred, say, in 2006 or 2005, whenever the last appearance was before the IJ? Your Honor, the I-130 was approved in 2007. I understand that. That's not my question. Answer my question. Yes, Your Honor. When did the immigration judge deny the I-485? Your Honor, this was in 1997. 1997. Okay. So now we have, in 2007, an I-130 that is approved. Your Honor, I'm sorry. It was in 2003. 2003. In any event, about four years later, in 2007, we have an approval of the I-130. And this is where I need your help and maybe misuse. Because it's my understanding from trying to study the law in this area that the next thing that has to happen is Mr. Concha has to go back before the immigration judge and move to adjust his status armed with an approved I-130. Isn't that correct? Yes, Your Honor. And he's never done that. Your Honor, when he first came before the court, the I-130 was approvable. And under the statutes that the I-130 fall upon, we do know that the sunset provision of Title VIII of the United States Code allows for the adjustment of status when the child is a principal alien or when David is a child of a principal alien, when he's eligible to receive a visa under 1153D. And then he also files the I-130 before April 30, 2001. Further, Section 1245.10 of Title VIII, A1IA specifically states that persons in David's position are grandfathered in if they file before April 30 and if the petition is approvable. But that has to do with the priority or not as to whether or not the visa will be immediately issued, correct? Your Honor, in this case, I was aware the priority box was not checked, and this is because there was no numerical limitation to the adjustment of status. I think you and I are talking past one another. Maybe I'm not articulating my questions very well. But my understanding of the law is that once the alien obtains an approved I-130, he has to go back either before a consular official if he's outside the country or an immigration official. And in this case, because he's in deportation proceedings, the official must be the immigration judge and present the approved I-130 in order to adjust his status under the I-485. Have I got the law right? Yes, Your Honor. And he hasn't done that yet? Your Honor, he did come before the court. He hasn't gone before the court with the approved I-130. With the approved I-130. Yes, Your Honor. So why shouldn't his remedy be to move to reopen the deportation proceeding on the basis of the changed circumstance that he is now in possession of an approved I-130? Your Honor, there's two issues with moving to reopen. First, it's our understanding, and it appears that the motion to reopen would be denied because there is a per se numerical limitation on motions to reopen. Petitioners are limited to one such motion. But this has changed circumstances, and that's an exception to the numerical bar, is it not? Your Honor, I'm not sure. Ms. Sue, can you help me on this? Yes, it is an exception. You're going to have to go to the court. It is an exception, but we've tried before to have it reopened. Because it was seven years after he accepted voluntary departure, we've had trouble getting the government to join us in a motion to reopen. And that's because he overstayed his voluntary departure. He did. Which is another factor that the immigration judge is permitted to consider in deciding whether or not to grant adjustment of status, right? Right. Okay. So theoretically it is possible to move to reopen on the basis of changed circumstances, but your assessment is it would be difficult to actually convince an immigration judge to grant discretionary relief because of that fact. It is. It has been denied in 2004, February 24, 2004. It was denied a motion to reopen. He didn't have the approved I-130 in 2000. He didn't have the approved I-130, that's right. Is there anything that would prevent him from going back now and moving to reopen now that he has an approved I-130? He could try, but he would have to consular process. He would have to leave the United States, and because of his unlawful presence he would be barred from coming back for 10 years. When does the 10 years start to run? Because my understanding was the voluntary departure was ordered in 1997. That's right. So unless there's some kind of a tolling provision, which I could not find under the statutes and regulations in my research. There's no legal basis for tolling. It would just be because of ineffective assistance, because of the notarial his mother consulted, and because of his minor age. Okay. So I'm not sure I got my question out. Hasn't the 10 years already run since there's no tolling of the 10 years? The 10 years begins. You have to be outside. I thought you had to be outside. I don't know. That's the question I'm asking you. This is a very thorny area of law in terms of the interplay between the regulations and the statute, and I couldn't find the answer to that question. I think you have to be outside, and then you're barred for 10 years from coming back inside. Okay. I'm not sure. I haven't worked long enough to really know, but that's my understanding. Let's hear from the government now. Your side still has about a minute and a half. Thank you. Good morning, Your Honors. May it please the Court, Jem Sponzo on behalf of the Respondent. First and foremost, to address this Court's April 30th order, this case is not moot principally because the approval of the I-130, as Your Honors pointed out, is just one of many elements that are a part of adjusting your status. This Court has recognized that approval alone really doesn't change the calculus here with respect to petitioner's eligibility for adjustment of status. But, yes, the proper remedy does lie before the agency. The narrow issue before this Court is whether the immigration judge, as affirmed by the Board, abused his discretion in denying petitioners severely untimely motion to reopen. To take a couple of points just off of... Well, what can we do to just cut through all the bureaucraties and try to get this case resolved? What can be done? Are you in a position at all to offer a potential solution which would take care of this individual? It's a very sympathetic case. What we're presented with is the consequence of many litigation choices made in this case along the way. Petitioner waited seven years to file his motion to reopen. He overstayed his voluntary departure order. For the immigration judge, he quite simply failed to prove that he'd suffered ineffective assistance of counsel. Those are major hurdles to getting to the next step here. But there are remedies that accrue from the approval of that I-130 and petitioner's resultant ability to adjust his status. Well, now that he has the I-130, what are his options? Regarding the voluntary departure bar, I would have to request an opportunity for supplemental briefing to very specifically answer the court's question regarding when that 10-year period begins to run. But I would be... You're not sure either whether or not it's told. With this case, I think that's a very tangential question, and it's a much simpler inquiry.  And this court needs to focus, or should focus, on whether the immigration judge abused his discretion in evaluating that motion to reopen. But... That was all before the I-130 was granted. Now we have changed circumstances. We do. We have that change, and that is... Are we not allowed to look at that? Is that what you're saying? Not at all. But it's a benefit that accrues to petitioner, and it changes his remedies before the agency, before the immigration judge, before the board, and before... You represent the United States government. If petitioner were to file a motion to reopen today, what would likely happen? This case was previously in mediation, as I'm sure Your Honors know. And I believe the ordinary course is that all remedies would have been pursued at that time. So I would concur. Mediation was pre-I-130 or not? I believe it followed that approval, or that approval came during the course of mediation. I was not the attorney that represented the government during mediation. But my review of PACER, at least, I think the I-130 had been approved. I think the only change for us was that it was not added to petitioner's request for judicial notice of that approval until quite recently. But the approval... Is your position, in response to Judge O'Scanlon's question, that we cannot consider the approved I-130 because it was not part of the administrative record before the immigration judge at the time he denied the motion to reopen? My answer is that it isn't necessarily dispositive of this Court's evaluation of the immigration judge's denial of the motion to reopen. And that answer is stricken as non-responsive to my question. Obviously, the I-130 at issue in this case was pending and was considered by the immigration judge. My question is, the I-130 has now been approved, but that occurred three or four years after the immigration judge ruled. May we consider... You certainly may, Your Honors. The I-130, as approved, is one of many pieces petitioner would be required to show in pursuing his application for adjustment of status. I don't understand why you take that position if the only issue before us is whether or not the immigration judge abused his discretion in denying the motion to reopen. Aren't we limited to the record that was before the immigration judge in 2003 when that ruling was made? Yes, you would be, in assessing whether the immigration judge abused his discretion in denying the motion to reopen. All right. So your position before this panel is that we should deny the petitioner's request for judicial notice because it is an act subsequent to the ruling of the immigration judge and may not be considered in assessing whether the immigration judge abused his discretion in 2003 when he denied the petition to reopen. Yes, Your Honor. With the very small caveat that given the many, many, many years that this petition for review has been pending, the case before this Court has developed, the discussion of the implications of that approval for petitioner's benefit outside of the present petition for review is not necessarily an inappropriate exercise. Would the government have to agree to, in essence, to sign off on a joint motion to reopen in order to give Mr. Concha any hope of bringing this back before the immigration judge? Not necessarily, Your Honor. It is certainly a preferred vehicle for pursuing these kinds of cases. Let me ask you, does this panel have the jurisdiction to order the IJ or the BIA to reopen? As I said, this case has already been in mediation. So my short answer, Your Honor, is that whatever remedies might be available have been pursued. I believe the appropriate course at this juncture would be to deny the petition for review because the immigration judge, as affirmed by the Board, did not abuse his discretion in denying petitioner's motion. We understand that, but what happens next? Petitioner's additional remedies accrue from that approved I-130 case. Such as? Pursuing his application for adjustment of status, either before the agency or at the consular level. Both of those remain available avenues for petitioners. Would the government give this petitioner enough time to do that before he's deported? Unfortunately, there's a very substantial amount of time that is passed here. Again, petitioner waited seven years to pursue his motion to reopen. And this case, with the benefit of mediation, has gone on for quite a while. I would agree with petitioner's counsel that given the choices made by petitioner in pursuing his motion to reopen, and in the filing of the form I-130 that was filed on his behalf, it's a difficult exercise. I hear this long response. I apologize. It sounds to me as if you're here in the hopes that we will order deportation at this point. Is that the government's position, this person has to be deported? That actually would not have to be the extent to which this court would go. The very narrow inquiry that we have is just to determine whether the petition for review should be granted or denied, based on whether the immigration judge abused his discretion. That's our inquiry at this juncture. This case has gone through many evolutions just since the docketing of the present petition for review. Whatever other remedies might be available are distinct from our inquiry today. And I do apologize for the long answers, but the short answer is just that the petition for review should be denied solely because the immigration judge, as affirmed by the board, did not abuse his discretion. But he's already under a deportation order, is he not? He is, Your Honor. And he's overstayed his voluntary departure. He has. So what would prevent officers from DHS from showing up on his doorstep this afternoon to execute that order? I believe there is a temporary stay in place before this court. So we do have that benefit at this juncture. But that stay will last only as long as and until we issue the mandate. Correct, Your Honor. In which case, then, he's susceptible to immediate deportation. But with respect to Petitioner's other remedies accruing from this new circumstance. What other remedies? Be specific. Whatever he might wish to pursue before the agency or at the consular level. Petitioner certainly can file. Give us a list. They're sitting here. They want to know what the government thinks are other available remedies. What are they? The filing of a motion to reopen based on this approved I-130. That, very simply, and again, this case having been in mediation, I concur with the representation that that's a difficult battle for Petitioner given how his case has evolved. But it is a remedy that could be pursued. And it is the appropriate course, given Petitioner's decision to file the petition for review that he has, at the point that he did, rather than seeking other relief before the agency, such as a motion for reconsideration following the Board's decision. Petitioner elected to file the present petition for review. Thus, we're somewhat limited by the two tracks that Petitioner might pursue. His proceedings before this Court and whatever other relief or remedy he may wish to seek before the agency. If you were to exercise your discretion to sign off, as Judge O'Scanlan said, on a motion to reopen, that would make a difference, wouldn't it? Unfortunately, I do not have any such discretion. The agencies that we represent before this Court could and may, but this case having been in mediation, I do think it is unlikely that there would be any different result reached than where we are today. You should assume, because mediation failed, that there was no such stipulation. Correct. And that any available relief was pursued. That is the ordinary course, to my understanding, when a case is in mediation. Thus, again, the inquiry we have is just very simple. If he moves to reopen, can he also ask for a stay of deportation from the immigration judge? Actually, Petitioner's remedies before the agency would go back to the Board, as he did take an appeal there, too, from the denial of his motion to reopen. But, yes, that is always a request that can be made. But he doesn't have to wait for us to issue our decision and to go back to the Board. Not at all, Your Honor. I mean, he could have called the petition to reopen this afternoon. It could have been done years ago. That's precisely the government's position here today. This Court should review the immigration judge's denial of the motion to reopen to see whether there was an abuse of discretion. And whatever other relief Petitioner might have, he can and, to date, has not pursued before the agency. And can the immigration judge stay? I guess he could. He could stay as prior deportation. Correct. Again, those requests would be made of the Board at this point, but that is certainly a motion that can be filed. And, again, has not. Thank you, Counsel. Thank you very much. Questions have taken you past your time. I'm sorry for my throat. On the Petitioner's side, you have a minute and a half between you. Do you have anything further to suggest at this point on behalf of your client? Very well, Counsel. Thank you, Your Honors. Theoretically, it is possible to go back and draw a motion before the Court with this now-approved I-130, but it seems probably futile, and it seems like we'll also need an opportunity to have this Counsel brief the issue of mootness because it is a complicated issue. Wait a second. I thought everybody was in agreement that it's not moot. What were you talking about, briefing the issue of mootness? That issue is resolved. Everybody's conceded it's not moot. Well, what do we need another brief for on that? Your Honor, if we've all conceded that it is moot, then it is possible that we would not need further briefing on the issue just to draw it out. Counsel, what is your strongest argument that could result in a grant of the PFR here? Right now, Your Honor, it seems like what we're asking for is an abeyance to pursue a joint motion to remand as a negotiated opportunity with a new district counsel. A joint motion with the government? Yes, Your Honor. I don't hear anything joint from the government. Right. Have you talked to Counsel? Your Honor, I don't believe we have. Well, how can you ask for a joint remand if the other side hasn't agreed to it? We would work with the other side to see if we could try to get a joint remand. At this point, I mean, of course the government wants a petitioner. I asked you your strongest argument to support a grant of the PFR here. Forget about joint remand for the moment. Do you have anything else? Your Honor, the PFR, could you clarify, please? I'm sorry? The PFR, could you clarify what that is, please? You're here on a petition for review. That is, Mr. Concha has filed a petition for review of a BIA order, and that's why this case is pending. Yes, Your Honor. Right now, the immigration judge abused his discretion. Furthermore, the period of time, the seven years we keep speaking about, should have been told because Concha was a minor at this time. He was a 13-year-old minor when he was issued the order of voluntary deportation. And therefore, we're asking that- What's your strongest case on tolling during minority? Your Honor, there's no federal law on point in this situation. However, the immigration courts have set 21 as the age of emancipation. After this time, the family can no longer sponsor an adjustment of status. There's some California law on point here. LA Williams versus- I'm sorry, Your Honor. Williams versus LA Metro Transit Authority, and it held that there's a longstanding issue of a principle that children are to be protected from their minority, from the destruction of their rights by running of statute of limitations. You have no federal case? There's no federal law on point, Your Honor. Thank you, Counsel. Before submitting this case, I would like to tell Ms. Hugh, we do appreciate your coming here on very, very short notice. You probably heard about it Friday night, is that right, or Saturday? 7.20 p.m. On behalf of the court, we apologize for the confusion that resulted when you filed the motion to withdraw. It was misinterpreted by the staff as, in effect, letting the Chapman University staff represent your client. And, of course, they are here in an amicus capacity, not as representing their client. So you need to consult with your amicus, and I would suggest that you refile whatever motion it is you wish to file with respect to withdrawing representation. But I can tell you we will not approve it unless a substitute counsel has been identified. Very well. All right. The case just argued will be submitted for decision. And we'll hear argument next in Delgado-Muñiz versus Holder.
judges: Lefkow, O'scannlain, Tallman